## William Goss, Appellant, v. Board of Education of the City of Chicago, Appellee.

### Gen. No. 31,927.

1. APPEAL AND ERROR—*termination of subject matter of litigation as ground for dismissal. Semble,* 'a motion to dismiss an appeal from an order sustaining a demurrer to enjoin a board of education and a high but successful bidder from proceeding with a plastering contract may be dismissed, where the contract has been completed pending the litigation and the complainant never moved for a preliminary injunction.

2. SCHOOLS AND EDUCATION—*nature of board of education rules.* The board of education of the city of Chicago is not a municipal corporation, and its rules and regulations do not have the force of ordinances.

3. PUBLIC CONTRACTS—*necessity of awarding by school to lowest bidder.* The provision of the Cities and Villages Act, Cahill's St. ch. 24, ¶ 176, that contracts for work shall be let to the lowest responsible bidder does not control contracts for the work of construction by the board of education of the city of Chicago.

4. PUBLIC CONTRACTS—*power of school board to award.* The powers of the board of education of the city of Chicago with reference to awarding contracts for work of construction are controlled by the act relating to boards of education in cities of 100,000, Cahill's St. ch. 122, ¶ 152.

5. INJUNCTION—*false reasons for awarding public contract to high bidder as not showing fraud.* In a taxpayer's suit to enjoin a board of education and the successful bidder from proceeding with a contract to plaster a school building contrary to a rule to award a contract to the lowest and best responsible bidder, an allegation that the board falsely pretends that its reason for letting the contract to the higher bidder is that it did not accept the bid of the lowest bidder because that company was engaged in other plastering work to such an extent as to impair its ability to perform the particular contract, does not show fraud and will not justify granting the injunction.

6. INJUNCTION—*excess bid of successful bidder for school construction contract as fraud.* The mere fact the bid of $29,000 of the successful bidder for a contract to plaster a school is $200 in excess of the lowest bidder, while a rule of the board of education provided for letting contracts to the lowest and best responsible bidder, does not impute fraud and will not justify enjoining the board and the successful bidder from proceeding with the contract.

Appeal by plaintiff from the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1927. Affirmed. Opinion filed December 27, 1927. Rehearing denied January 9, 1928.

SAMUEL B. KING, for appellant.

JAMES TODD, for appellee; FRANK S. RIGHEIMER, RALPH W. CONDEE and WHARTON PLUMMER, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Complainant appeals from an order sustaining a demurrer to his bill of complaint as amended and ordering that it be dismissed for want of equity. There is before us a motion to dismiss the appeal on the ground that the subject matter of the litigation has terminated, leaving only for the consideration of this court a moot case or abstract question.

November 28, 1925, complainant, William Goss, filed his bill as a taxpayer, alleging that October 1, 1925, the Board of Education of the City of Chicago advertised for bids for lathing and plastering the Rufus M. Hitch school building in course of construction; that Goss & Guise, a corporation, had been for many years engaged in Chicago in contracting for such work and made its bid for this particular work for $28,800 and inclosed the required certified check; that June 18, 1924, the Board of Education adopted a set of rules covering the making of contracts for the construction of buildings, and among said rules are sections 2 and 3. In the latter was the provision that: "Contracts shall be awarded to the lowest and best responsible bidders in each instance, quality considered"; that Goss & Guise had theretofore done lathing and plastering work for the Board of Education in the City of Chicago to the satisfaction of said Board; that the bid nearest to the bid of Goss & Guise for the work in question was that of James D. Corcoran, which was $29,000; that both of these bidders had done work for the Board of Education and that the record of Goss & Guise for expedition and quality of work was superior to the record of Corcoran for similar work; that notwithstanding Goss & Guise was the lowest and best responsible bidder, the Board of Education, in violation of its duty, awarded said contract to Corcoran. Complainant asked that the Board of Education and Corcoran be enjoined from proceeding with the performance of the contract.

January 6, 1926, the Board of Education filed a demurrer which on January 23 was sustained and a motion for a temporary injunction was denied and leave was given complainant to amend his bill of complaint. February 15, 1926, the amendment was filed by striking out certain portions of the bill and adding allegations that in adopting the rule that contracts "shall be awarded to the lowest and best responsible bidders

in each instance, quality considered," the Board of Education departed from the requirements of the statute, section 74, Cahill's St. ch. 24, ¶ 202, of the act entitled "An Act concerning local improvements," in force July 1, 1897, by interpolating the word "best" as qualifying the term "responsible bidder," and also interpolating the words "quality considered" "as a qualification to said rule." The amended bill also set forth more extensively the work which Goss & Guise then had under contract with the Board of Education, and also other matters. March 1, 1926, a general demurrer was filed to this bill as amended. February 2, 1927, the order was entered, sustaining the demurrer and dismissing the bill of complaint, which is the occasion of this appeal.

The Board of Education in support of its motion to dismiss the appeal calls the attention of this court to the fact that, although his bill was filed in November, 1925, and amended February 15, 1926, complainant never made a motion for a preliminary injunction under his bill as amended and made no move whatever in the case until November 10, 1926, when his counsel served notice that on November 15 he would move the court to dispose of the demurrer to his amended bill of complaint. It is shown by affidavits which are not controverted, that in the meantime, in the month of April, 1926, the general construction of the school in question had proceeded to a point so that Corcoran commenced the plastering and lathing work on said building under his contract; that the building was opened for public school purposes on September 7, 1926, and Corcoran had finished his entire work in October, 1926, and was awarded a final certificate by the architect of the Board of Education on November 6, which was paid on November 8; that it was practically one year after complainant filed his original bill before the order was made dismissing the bill for want of equity and that during the period when Corcoran

was performing the work under his contract complainant made no move in the case.

It is argued that because of the necessity of having the school building ready for the opening of school in September, 1926, it was unreasonable to suppose that the Board of Education would hold up the construction work until complainant should make some move in the matter; that as the work has now been completely finished and Corcoran paid for the same, there is nothing left for this court to pass upon except a moot case and no questions to settle except abstract questions of law.

In *Wick v. Chicago Tel. Co.*, 277 Ill. 338, it was held that the existence of an actual controversy is an essential requisite to appellate jurisdiction, and that the reviewing court will dismiss an appeal where facts are disclosed which show that such a controversy does not exist, even though such facts do not appear in the record; and in *Donahoe v. Owens*, 277 Ill. 318, it was said: "This court will not decide questions that no longer exist, merely for the sake of making a precedent or of settling a simple matter of costs."

In *People ex rel. Chance v. Burke*, 274 Ill. 55, it was held that the court would refuse to grant a writ of mandamus when the right sought to be enforced is or has become a mere abstract right, the enforcement of which, by reason of some change of circumstance since the commencement of the suit, can be of no substantial or practical benefit. This rule was repeated in slightly different form in *Sobieski v. City of Chicago*, 325 Ill. 259; *Lyle v. McKinlay*, 229 Ill. App. 349; *People v. Stevens*, 152 Ill. App. 118; *Gormley v. Day*, 114 Ill. 185.

It is too clear for argument that, in view of the fact that the work sought to be enjoined has been completed, the writ of injunction prayed for by complainant would be futile and useless. While it is true that the cases cited involved the writ of mandamus,

yet no good reason occurs to us why the rule there stated should not in a proper case be applicable to an injunction case.

We are referred to *Holden v. City of Alton,* 179 Ill. 318, as deciding that, where a bill for injunction is filed and the court has acquired jurisdiction, if the defendant acts, it is at the risk of being compelled to restore the condition existing when the court acquired jurisdiction. In that case there is no suggestion of any laches on the part of the complainant and apparently he proceeded promptly with his case. The rule there stated is applicable to that case, but general equitable principles should not permit a complainant, by the mere act of filing a bill for an injunction and letting it sleep until after the work has been completed, to maintain any right to enjoin the work. Were there no other considerations involved, we would be inclined to grant the motion to dismiss.

However, we have also considered the case upon its merits and hold that the demurrer to the bill as amended was properly sustained. Complainant's bill is predicated upon the assumption that the letting of building contracts by the Board of Education is controlled by the statute relating to the letting of contracts for local improvements, section 74 of the Cities and Villages Act, chapter 24, Illinois Statutes, Cahill's St. ch. 24, ¶ 202, in force July 1, 1897. The particular provision of this act said to be applicable is that contracts for work "shall be let to the lowest responsible bidder," which it is asserted the Board of Education by its rules changed to "the lowest and best responsible bidders in each instance, quality considered." This act concerning local improvements does not control the Board of Education of the City of Chicago. Section 1, Cahill's St. ch. 24, ¶ 122, of said act provides that the "corporate authorities of cities, villages and incorporated towns are hereby vested with the power to make such local improvements *  *  *

as they shall by ordinance prescribe." The Board
of Education of the City of Chicago is not a mu-
nicipal corporation, and its rules and regulations
do not have the force of ordinances. Section 74
of this act prescribes that the contracts for the
making of any work of improvement "shall be
approved by the president of the board of local
improvements." This language is not applicable
at all to the Board of Education. By section 50, art. 9
of the Cities and Villages Act, Cahill's St. ch. 24, ¶ 176,
approved July 1, 1872, it is provided that, when the
expense of any public work exceeds $500, it shall be
let to the lowest responsible bidder in the manner pre-
scribed by ordinance, such contracts "to be approved
by the mayor or the president of the board of trus-
tees." By amendment in 1911, it was provided that
such contracts must be approved by a two-thirds vote
of the aldermen or trustees elected and that the work
shall be supervised by the commissioner of public
works. None of these sections covers or controls con-
tracts for the work of construction by the Board of
Education. The powers of the Board of Education
of the City of Chicago with reference to awarding
contracts are controlled by the act relating to Boards
of Education in cities of 100,000, in force April 20,
1917 (Cahill's St. ch. 122, ¶ 152). Section 154 of this
act provides that the business manager of the Board
shall have general charge, subject to the approval of
the Board, of the making of all contracts for the erec-
tion and construction of school buildings.

That the Board of Education is not a municipality
within the meaning of the statute, was held in the
recent case of *People ex rel. Leland v. Board of Edu-
cation of City of Chicago*, 325 Ill. 320. It was there
held that the rules and regulations of the Board of
Education do not have the force of municipal ordi-
nances and do not constitute such boards municipal
corporations; that the word "municipal" applies
strictly to only what belongs to a city or pertains to a

city or community within a State possessing rights of self-government.

All of the cases except one cited by complainant to support his position involves sections of the Cities and Villages Act. The exception is *Adams v. Brenan,* 177 Ill. 194, where the board by rule provided that all contracts for work on school buildings should be done by union labor only, but the court, in the exercise of its general chancery powers, held that such a rule was unreasonable and therefore void as tending to create a discrimination between different classes of citizens and to create a monopoly restricting competition in bidding.

Undoubtedly, in the exercise of its general equity jurisdiction, courts would have the power to restrain any act of the Board of Education which was fraudulent or so unreasonable as to result in injustice. No sufficient allegations of fraud appear in the bill. It alleges that the reason given by the Board of Education for not accepting the bid of Goss & Guise was that this corporation already had under contract other plastering work of such volume and extent as to impair its ability to fulfil the contract for the particular school building in question. The only attempt to charge fraud is the allegation that the Board of Education falsely pretends that this is the reason for awarding the contract to Corcoran. This is not the statement of any facts showing fraud, but merely an allegation that the alleged reasonable grounds for awarding the contract to Corcoran were not the real grounds.

The mere fact that one bid was $200 in excess of the other does not impute fraud. Under its rules the Board had a certain amount of discretion in awarding contracts, and, if for the reason suggested in complainant's bill, namely, that because the extent and volume of the work already awarded to Goss & Guise

might interfere with the promptness with which the instant work would be completed, the Board concluded to award the contract to another bidder at a figure slightly in excess, we cannot say that this called for judicial interposition.

The chancellor properly sustained the demurrer and ordered the bill dismissed for want of equity, and this judgment is affirmed.

*Affirmed.*

MATCHETT, P. J., and O'CONNOR, J., concur.