(No. 20091.— ▮▮▮▮▮▮)
AGNES TUTTLE, Defendant in Error, *vs.* SEWARD M. GUNDERSON *et al.* Plaintiffs in Error.

*Opinion filed October 25, 1930.*

MILLER, GORHAM & WALES, (C. R. LARRABEE, of counsel,) for plaintiffs in error.

BROWN, BROWN & BROWN, (HUGH W. HOUSUM, of counsel,) for defendant in error.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

Agnes Tuttle filed a bill for divorce in the circuit court of Cook county on September 28, 1928, against her husband, William J. Tuttle, on the ground of habitual drunkenness, alleging that they were married on December 30, 1913, and lived together as husband and wife until August 27, 1928, when he deserted her in Paris, France. They had one child, a boy, who was two and a half years old at the time of the filing of the bill. The bill further alleged that the defendant had no business or occupation but was possessed of a large income, was the owner of large tracts of farm land in North and South Dakota, estimated to be of the value of $250,000, and was possessed of stocks, bonds and other securities, as the complainant believed, of the value approximately of $75,000 to $100,000, from which he had an income of from $5000 to $6000 a year. In addition to this, the defendant was receiving in installments the income

from a trust fund of $250,000, administered by Seward M. Gunderson and Joseph Simons, trustees under the will of William P. Tuttle, deceased, the income amounting, as the complainant was informed and believed, to $15,000 or $20,000 a year; that the defendant had always supported the complainant during their married life in a manner suitable to his large income, but that the complainant had no funds or property of her own with which to support and maintain herself except the small amount of $500, the remainder of certain moneys left with her by the defendant at the time of their separation. The bill prayed for a divorce, the care and custody of the child, such amount of money to be paid by her husband to her as the court might deem necessary and proper for the support and maintenance of herself and the child and a sufficient sum to enable her to employ counsel and prosecute her suit, and that such sums as might be awarded to her should be made a lien on the funds that might become due to her husband from the trustees under the will. A summons was issued for the defendants, which was served upon the trustees but was returned not found as to Tuttle. An affidavit of nonresidence was filed and notice was given him by publication, but no appearance was entered on his behalf. The trustees appeared and answered separately, admitting the existence of the trust fund of $250,000 of which they were trustees appointed under the will of William P. Tuttle and that the net income from the fund amounted to slightly over $15,000; showing also that the provisions of the will of William P. Tuttle constitute a spendthrift trust, the income from which must be paid to William J. Tuttle in person and not upon any written or verbal order nor upon any assignment or transfer by William J. Tuttle until he shall have arrived at the age of fifty years, at which time the fund was to be paid over to him, if living, likewise in person and not upon any written or verbal order, assign-

ment or transfer by him, and showing that he will not be fifty years old until February 1, 1932.

On October 15, 1928, the complainant filed a petition in the cause showing that the defendant had departed from the State prior to the time of the filing of the bill of divorce and that he was then residing in the city of Paris, France, so that personal service could not be made upon him; that he had been served by publication of notice but had failed to appear in the cause; that he was not a proper person to have the care, custody and education of the child; that he possessed large means, as set out in the bill, and was in receipt of the income from the $250,000 trust fund administered by the defendants, who were trustees, amounting to slightly over $15,000 a year. The petition further alleged that the petitioner was informed and believed that just prior to his leaving the jurisdiction he had in cash, bonds and other property $80,000, which he took with him to Paris, and that that sum, together with the real estate in North and South Dakota, was beyond the jurisdiction of the court and could not be reached to satisfy any award for alimony to the petitioner or for the support and maintenance of the child; that the trust fund was a spendthrift trust created for the use and benefit of William J. Tuttle, under the terms of which payments could be made by the trustees to him, only, in person, and not upon any written or verbal order, assignment or transfer by him; that the petitioner had no property of her own with which to support herself and the child, and she prayed for an order awarding to her the care and custody of the child on the final hearing of the cause, for the payment of such sums of money as might be necessary for her support and the child's during the pendency of the cause, for a reasonable amount to be allowed her on account of solicitor's fees to enable her to prosecute her suit, and that the sums so awarded be made a charge upon the income of the trust estate and the trustees restrained from paying any part of

the income of the estate to William J. Tuttle until the further order of the court. The trustees moved to dismiss the bill as to them on the ground that the court was without jurisdiction to enter a personal decree against the defendant William J. Tuttle; that the rights, if any, of the complainant against the trustees could be asserted solely through her rights against the defendant William J. Tuttle, and that there was no property of the defendant William J. Tuttle within the jurisdiction of the court. This motion and the petition were heard together upon evidence heard in open court.

The will of William P. Tuttle admitted to probate in the probate court of Cook county on November 20, 1924, was received in evidence. The trust in favor of William J. Tuttle was created by a codicil dated September 18, 1924, the part material to be considered being as follows:

"I hereby alter, revoke and change the terms of the codicil dated December 2, 1917, to my last will and testament bearing date August 4, 1900, in which codicil I made a provision for my son, William J. Tuttle, born February 21, 1882, so that in the place and stead of the said codicil, and in substitution thereof, I do now provide for him in money, lands and trust fund to the aggregate principal amount of five hundred thousand dollars providing further that if the estate of which I die seized and possessed, after deducting all inheritance and transmission taxes and costs and expenses of administration of my estate, shall exceed one million five hundred thousand dollars, then I hereby direct that the amount provided for him be increased in cash out of the balance of the estate so that his proportion shall be not less than the one-third of the total net estate, that is to say, as follows: I now give and bequeath to my son, William J. Tuttle, the sum of one hundred thousand dollars. Further, I now also give, devise and bequeath to my son, William J. Tuttle, to be taken by him as of the valuation of one hundred and fifty thousand dollars, all of my lands,

farms and ranches situated in North Dakota and in South Dakota, of which I may die seized and possessed, to have and to hold the same to him, his heirs and assigns forever. Further, I now also hereby direct that my trustees hereinafter named shall set aside out of my estate, and I do for that purpose give to them, the sum of two hundred and fifty thousand dollars, which shall by them be invested and the income and increment shall be paid in installments convenient to my trustees, to my son, William J. Tuttle, in person and not upon any written or verbal order, nor upon any assignments or transfer by said William J. Tuttle, until he shall arrive at the age of fifty years, at which time the said trust fund shall be paid over to my said son William J. Tuttle, if living, likewise in person and not upon any written or verbal order nor upon any assignment or transfer by said William J. Tuttle. In the event of the death at any time during the continuance of this trust, the amount of the trust fund then so remaining together with the unpaid increase and increment thereof shall be paid to, transferred and assigned to whomsoever he may by his written last will and testament designate, and in default of such designation, then to the administrator of his estate. The said trustees in the management of said trust fund shall have all of the powers, duties, obligations, exemptions, privileges and rights to compensation as are hereinafter set forth concerning the management of my residuary estate."

On February 2, 1929, the court entered an order denying the motion of the trustees to dismiss the suit as to them, finding that the trust was a spendthrift trust; that William J. Tuttle had a vested interest in the trust estate; that his enjoyment thereof was postponed until he should arrive at the age of fifty years; that he was then of the age of forty-seven years; that the income of the trust estate was slightly in excess of $15,000 a year; that it was the intention of the testator to provide for the support and

maintenance of his son and of his son's wife and child, if any child were born to them, out of the income of the trust estate, and that the complainant and child had an equitable interest in the trust estate and were entitled to support and maintenance out of the income; that $50 a week for each of them was a reasonable allowance for such support and maintenance; that defendant William J. Tuttle was beyond the jurisdiction of the court but the trust estate and its income were within the jurisdiction of the court; that the proceeding was *in rem* and the court had jurisdiction of the trustees and the income from the trust estate. The order directed that the trustees sequester from the income of the trust estate as it came into their hands, the sum of $100 a week and pay it to the complainant in installments convenient to the trustees, beginning January 11, 1929, the sum of $50 for the support and maintenance of the complainant and the further sum of $50 for the support and maintenance of the child, until the further order of the court. The trustees appealed from this order and the Appellate Court for the First District affirmed it. A writ of *certiorari* was allowed to the trustees at the February term, 1930.

William J. Tuttle died on February 22, 1930. On March 19, 1930, the defendant in error suggested the death of William J. Tuttle, the principal defendant in the cause, and moved that an order be entered declaring the cause abated by reason of his death. The attorneys for the plaintiffs in error, the trustees, filed counter-suggestions, to which the defendant filed suggestions in reply. The suit for divorce, of course, abated on the death of the defendant. Had his death occurred before this decree was rendered no decree of any kind could have been entered in the cause. Had the decree rendered against him been an ordinary personal decree for alimony, directing the payment of money by the defendant at stated intervals, it would have been erroneous and could not have been enforced against

him because there was no personal service on him and no appearance entered for him, and therefore no decree imposing a personal liability on him could be entered. The court entered no personal decree against him. No order for the payment of alimony was made, but the trustees, who are the plaintiffs in error, were ordered to sequester from the income of the trust estate as it came into their hands, $100 a week and pay it over to the defendant in error, beginning as of January 11, 1929, $50 for the support and maintenance of the defendant in error and $50 for the support and maintenance of the child. This order was based upon the finding of the court in its decree that it was the intention of the testator by his will to provide for the support and maintenance of the defendant and of the defendant's wife and child, if any child were born to them, out of the income of the trust estate, and that the defendant in error and her child have an equitable interest in said estate and are entitled to support and maintenance out of the income therefrom, and that sufficient of the income should be sequestered for that purpose and $50 a week each is a reasonable allowance for the purpose. The court further found that the defendant was beyond the jurisdiction of the court but that the trust estate and its income were within the jurisdiction of the court; that the proceeding was *in rem* and the court had jurisdiction of the trustees and the income from the trust estate.

From the suggestions and affidavits in support of and in opposition to the motion, it appears that the trustees, after the rendition of the decree of February 2, 1929, did not comply with it, being advised that they were not required to do so, but that they had paid the income of the trust fund to William J. Tuttle and not to Agnes Tuttle; that William J. Tuttle after February 2, 1929, paid to Agnes Tuttle $100 a week, beginning as of January 11, 1929, and such payments were continued to and including February 2, 1930; that the actual payment was made to

her through the solicitors for the trustees, either for the trustees or for William J. Tuttle, and she subsequently received from the trustees the further sum of $500 without prejudice to their right to have the same applied as a *pro tanto* discharge of the obligation of the trustees, if William J. Tuttle insisted that it should be so applied, and that she has thus been paid in full and has no claim either against the trustees or the estate of William J. Tuttle under the decree.

In opposition to the motion it was suggested that if the decree was valid there is due to Agnes Tuttle under it approximately $5800·of the income of the fund which they have paid to William J. Tuttle and not to Agnes Tuttle, and that sum constitutes no part of the estate of William J. Tuttle for the determination of succession taxes, inheritance taxes, personal property taxes or similar imposts, duties or excises, and Agnes Tuttle may file her claim against the estate for arrears of alimony, which, if allowed, would to that extent decrease the fund in the hands of the administrator subject to imposts, duties and excises, as aforesaid. If, however, the order is erroneous, it is contended that the fund held by the plaintiffs in error and turned over to the administrator is not subject to diminution by subtraction therefrom of any sum or sums purporting to be payable therefrom by virtue of the terms of that order, and the estate of William J. Tuttle for purposes of imposts, duties and excises, as aforesaid, will be to that extent the greater; that though the cause has abated as to William J. Tuttle it is not abated as to the trustees, and the determination of the validity of the order of February 2, 1929, and of the duties, if any, of the plaintiffs in error thereunder, will prevent possible future controversy and litigation between the administrator of the estate of William J. Tuttle and the People of the State of Illinois for the ascertainment and collection of taxes, imposts, duties or excises. The court denied the motion to abate the cause,

and at the April term it was submitted and taken under advisement.

The relief sought against the plaintiffs in error was merely ancillary to that sought against the principal defendant. His death terminated the marital relation and all rights and liabilities growing out of it. It also terminated the trust, except the duty to pay and deliver the trust property as directed by his will or to his administrator. Since there is no will and an administrator has been appointed, to whom the trustees have delivered the property, since the decree has been fully complied with either by the trustees or William J. Tuttle, the beneficiary of the trust, and since all the beneficial interest in the property which was included in the trust has been vested in the defendant in error and her child, there is no cause of action between the defendant in error and the trustees which can be prosecuted. There is no real controversy between the parties to this record, and the general rule is that when a reviewing court has notice of facts which show that only moot questions or mere abstract propositions are involved it will dismiss the appeal or writ of error. (*Wick* v. *Chicago Telephone Co.* 277 Ill. 338.) Where the substantial questions involved in the trial court no longer exist, an appellate court will not review the cause merely to decide moot questions, to make a precedent or determine the liability for costs. (*Sobieski* v. *City of Chicago,* 325 Ill. 259; *People* v. *Sweitzer,* 329 id. 380; *Wingert* v. *First Nat. Bank,* 223 U. S. 670.) The duty of judicial tribunals is limited to determining rights of persons or of property which are actually controverted in the particular case before it. When, in determining such rights, it becomes necessary to give an opinion on a question of law, that opinion may have weight as a precedent for future decisions; but the court is not empowered to decide moot questions or abstract propositions, or to declare, for the government of future cases, principles or rules of law which cannot affect the result as to the thing in issue

in the case before it. (*California* v. *San Pablo and Tulare Railroad Co.* 149 U. S. 308; *Kimball* v. *Kimball,* 174 id. 158.) When, pending an appeal from a judgment of a lower court, without any fault of the defendant an event occurs which renders it impossible for a court of review, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a final judgment but will dismiss the appeal. Such a fact, when not appearing on the record, may be proved by extrinsic evidence. (*Mills* v. *Green,* 159 U. S. 651; *Moy* v. *United States,* 113 id. 216; *Wick* v. *Chicago Telephone Co. supra.*) The question in this case between the plaintiffs in error and the defendant in error has become merely a moot question, which does not affect any controverted right of the parties, and the writ will be dismissed.

*Writs dismissed.*